UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARLES ROTHMAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) No. 4:11-CV-639 (CEJ) |
| GEORGE LOMBARDI, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion for summary judgment filed by defendants Missouri Department of Corrections (MDOC), Ronald Cowley, Kyle Webb, and George Lombardi; the motion for summary judgment filed by defendants Corizon, Inc. (Corizon) and Dr. Charles Chastain; and the motion to bifurcate filed by plaintiff. The parties have filed memoranda, and the issues are fully briefed.

### I.  Background

Plaintiff brings this action under 42 U.S.C. § 1983, the American with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act of 1973, 42 U.S.C. § 701, *et seq.* At all times relevant to the second amended complaint, plaintiff was in the custody of the MDOC.

On December 19, 2008, plaintiff was brought to the infirmary at the Eastern Reception Diagnostic and Correctional Center (ERDCC) for complaints of chest pain. Plaintiff received a medical lay-in order, which prescribed that he be assigned to a cell on the lowest tier and that he be given a bottom bunk.[1] Plaintiff alleges that on the

---

[1] "Medical lay-ins" are physician-issued documents that contain restrictions on an inmate's placement and/or activities because of a medical condition. See Dykes v. Murphy, No. 4:09-CV-1062 (E.D.Mo. February 25, 2011).

same day, two corrections officers, defendants Webb and Cowley, assigned plaintiff to a second floor cell and an upper bunk despite being aware of the medical lay-in order.

On December 23, 2008, plaintiff lost his balance and fell while descending a staircase. Plaintiff was taken to the ERDCC's emergency room where he was treated by defendant Chastain, an employee of defendant Corizon. Defendant Corizon has a contractual agreement with the State of Missouri to provide medical services to offenders in the MDOC. Defendant Chastain performed a physical examination and ordered x-rays of plaintiff's cervical, thoracic, and lumbar spine. Plaintiff was subsequently admitted into the transitional care unit until December 29, 2008. Plaintiff was diagnosed with neck and back sprain and contusion of his costal cartilages.

Plaintiff claims that his back pain has continued to the present date and alleges that he did not receive sufficient treatment or accommodations for his injuries. Plaintiff brings suit against defendants Webb, Cowley, Chastain, and Corizon pursuant to § 1983, asserting that their deliberate indifference to his serious medical needs violated his rights under the Eighth Amendment to the United States Constitution. Plaintiff also brings suit against defendants MDOC and Lombardi under the ADA and Rehabilitation Act, asserting that they excluded him from services, programs, and activities because of his disability.

## II.    Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit

of all reasonable inferences to be drawn from the underlying facts. <u>AgriStor Leasing v. Farrow</u>, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. <u>United of Omaha Life Ins. Co. v. Honea</u>, 458 F.3d 788, 791 (8th Cir. 2006) (<u>quoting</u> Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

### III. Discussion

#### A. Count I: Section 1983 Claims Against Webb and Cowley

Plaintiff alleges that Webb and Cowley disregarded his medical lay-in order and refused to reassign him to a first floor cell with a lower bunk. Plaintiff alleges that they were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. Defendants argue that they are entitled to summary judgment because plaintiff has failed to produce any evidence supporting his deliberate indifference claim.

"To the extent that [a] plaintiff's claim of placement in a cell contrary to a medical lay-in order may be construed as a claim of deliberate indifference to a medical need, 'it is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to prisoners from deliberate indifference to serious

medical needs.'" Haley v. CMS, Case No. 1:09-CV-144 (E.D. Mo. Sept. 19, 2012) (quoting Vaughn v. Greene Cty., Ark., 438 F.3d 845, 850 (8th Cir. 2006)); Jaladian v. Hughes, 2006 WL 1629114, *3 (E.D. Cal. June 9, 2006) ("A prison official who interferes with the instructions of a physician may be liable for an Eighth Amendment violation.").

To establish deliberate indifference, plaintiff "must prove an objectively serious medical need and that prison officials knew of the need but deliberately disregarded it." Nelson v. Corr. Med. Servs., 583 F.3d 522, 531-32 (8th Cir. 2009); see also Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997); Farmer v. Brennan, 511 U.S. 825, 847 (1994). The second part of the test requires plaintiff to prove that the prison official was more than negligent. Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006).

### 1. Defendant Kyle Webb

Webb argues that plaintiff has failed to produce any evidence of his deliberate indifference to plaintiff's serious medical needs. In support of this contention, defendant Webb points to plaintiff's deposition testimony that he gave his medical lay-in order to Webb without any further comment or explanation. Webb argues that because plaintiff took no further action to inform Webb about his serious medical condition supporting a housing adjustment, Webb had no knowledge of a serious risk of harm.

There is no dispute that plaintiff was issued a medical lay-in order on December 19, 2008. There is also no dispute about the contents of the order, which do not include a diagnosis and do not identify a specific medical condition. The substantive portion of the order consists of the following list of restrictions:

>    Assistive device required
>    Cane
>    No high places or use of ladders
>    No prolonged standing
>    No repetitive bending, stooping, squatting
>    No running basketball or handball
>    Requires lower bunk
>    Requires lower floor
>    Unable to participate in work activities

[Doc. #125-5]. Plaintiff testified that he gave the order to Webb on the same day it was issued and that the only statement he made to Webb at the time was, "The doctor said give this to you." [Doc. #125-2, at 27].

The Court finds that plaintiff has failed to come forward with sufficient evidence showing that Webb knew about plaintiff's serious medical condition and consciously disregarded his medical needs. It would be unreasonable to assume that a prison official would be aware of the existence or severity of a serious medical condition by simply receiving a medical lay-in order from an inmate who did not identify or describe the reasons for the restrictions. Although the act of disregarding a doctor's prescription can be considered negligent, it cannot constitute deliberate indifference when the prison official has little or no information regarding the inmate's condition. See Hron v. Jenkins, 1999 WL 169394, *2 (10th Cir. 1999) ("Defendants' failure to place him in a lower bunk reflects negligence rather than deliberate indifference."); Rothman v. Lombardi, 2011 WL 1743831 (E.D. Mo. May 4, 2011) (A lay-in order "is not the same as showing a serious medical condition."); Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011) ("[T]he Eighth Amendment does not codify common law torts."). Furthermore, the fact that plaintiff was an older man who ambulated with a cane does not reflect an objectively serious medical need. Accordingly, Webb is entitled to summary judgment on plaintiff's § 1983 claim.

### 2. Defendant Ronald Cowley

Cowley also argues that plaintiff has failed to produce any evidence of his deliberate indifference to plaintiff's serious medical needs. The Court agrees. Plaintiff has failed to describe Cowley's involvement in the underlying matter. Plaintiff testified in his deposition that he did not know of defendant Cowley and that he only remembered telling the "bubble officer," his caseworker, and his cellmates about the issuance of his medical lay-in order. [Doc. #125-2, at 28, 34-35]. Plaintiff identified the bubble officer as "Sergeant Webb," not defendant Cowley. [Doc. #125-2, at 23-24]. "There can be no liability under § 1983 unless there is an affirmative link between a defendant's actions and the claimed deprivation." See Jaladian, 2006 WL 1629114, at *4 (citing Rizzo v. Goode, 423 U.S. 362 (1976)). Although a fellow inmate, Jeffrey Bidwell, submitted an affidavit stating that he witnessed plaintiff give his medical lay-in order to Webb and a bubble officer, Mr. Bidwell did not identify Cowley as the bubble officer. [Doc. #51-1].

Even if the plaintiff could prove that Cowley received a copy of the medical lay-in order, that would not be sufficient evidence to establish an Eighth Amendment violation.[2] Plaintiff has not come forward with evidence showing that Cowley actually knew about plaintiff's serious medical condition and consciously disregarded his medical needs. Presenting a prison official with a medical lay-in order that contains neither a description of the medical condition nor a diagnosis is insufficient to show an official's awareness of a serious medical condition. Accordingly, Cowley is entitled to summary judgment on plaintiff's § 1983 claim.

### B. Count II: Section 1983 Claim Against Dr. Chastain

---

[2] Prison records show that Cowley was assigned to work the bubble officer shift on December 19, 2008. [Doc. #149-2].

-6-

Defendant Chastain was plaintiff's treating physician on December 23, 2008, the day of plaintiff's fall, and continued to treat plaintiff until he was transferred out of the ERDCC in April 2009. [Doc. ##125-6, at 33; 125-8, at 3-6]. Plaintiff alleges that Chastain's failure to determine whether plaintiff sustained an injury to his spinal cord was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Defendant Chastain argues that he is entitled to summary judgment because plaintiff cannot establish that he deliberately disregarded a serious medical need. In support, Chastain points to evidence reflecting that plaintiff received immediate and continuing medical attention following his fall. Chastain further points to plaintiff's medical records to show that examinations and x-rays did not demonstrate any evidence of a spinal injury.

In order to establish deliberate indifference, plaintiff must show more than even gross negligence. Williams v. Jackson, 600 F.3d 1007, 1014 (8th Cir. 2010). A plaintiff "must prove an objectively serious medical need and that prison officials knew of the need but deliberately disregarded it." Nelson, 583 F.3d at 531-32. An inmate's mere disagreement with the type of treatment he receives is not actionable. See Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996) (prison officials do not violate the Eighth Amendment when, in exercising professional judgment, they refuse to implement an inmate's requested course of treatment); Alberson, 458 F.3d at 765. "Moreover, nothing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment." Long, 86 F.3d at 765.

The medical record reflects that plaintiff was taken to the infirmary on December 23, 2008 as a result of his fall. Plaintiff complained of pain in his left anterior ribs,

neck, and back. Defendant Chastain wrote that plaintiff suffered from a costal cartilage contusion and sprain of the neck and back. Plaintiff was given Tylenol with codeine elixer. [Doc. #129-3, at 11-12]. On December 24, 2008, x-rays were taken of plaintiff's cervical, thoracic, and lumbar spine. The results reflected mild degenerative changes in the lower cervical spine with some disk space narrowing at C-6, C-7, no bony abnormalities in the thoracic spine, evidence of fusion in the lumbar spine at L4-L5, S1, and no acute fractures. [Doc. #129-3, at 13-14]. Plaintiff continued to be seen by Chastain from December 25-27, 2008, during which time plaintiff's condition was monitored. [Doc. #129-3, at 16-20]. On December 29, 2008, it was noted that plaintiff "moves better" and that the "sprain and contusion of back improved." [Doc. #129-3, at 20]. Plaintiff was released from the transitional care unit and given Naproxen.[3]

On January 20, 2009, plaintiff was seen for complaints of "cold feet." [Doc. #21, at 21]. On January 22, 2009, plaintiff was seen for complaints of pedal edema, which is swelling of the feet and legs. [Doc. #129-3, at 22; Doc. #125-6, at 39]. On January 26, 2009, plaintiff was seen for medication passes. [Doc. 129-3, at 22]. On January 28, 2009, plaintiff was seen for eye pain. [Doc. #129-3, at 23]. On February 5, 2009, plaintiff was seen for cardiovascular issues and low back pain. [Doc. #129-3, at 22-26]. The treatment notes record plaintiff's comments that Naproxen was not effective. Chastain replaced the Naproxen with Elavil H.S. Amitriptyline. [Doc. #129-3, at 26]. On March 24, 2009, plaintiff was seen for a rash. [Doc. #129-4, at 2]. On April 12, 2009, plaintiff was seen for complaints of chronic back pain. [Doc. #129-4, at 3-4].

---

[3] Naproxen is the generic name for Naprosyn, a nonsteroidal anti-inflammatory drug used for relief of tendonitis and pain management. See Phys. Desk Ref. 2769-70 (60th ed. 2006).

On April 13, 2009, plaintiff requested Darvocet,[4] which was not provided. [Doc. #129-4, at 4-5]. On April 14, 2009, plaintiff refused assessment, but stated that he was "moving so much better." [Doc. #129-4, at 6]. According to the medical records, this was the last time Chastain saw plaintiff.

Chastain testified in his deposition that he conducted a physical examination of plaintiff after the fall, which included review of tender areas, heart, lungs, abdomen, legs, and sensorium. [Doc. #125-6, at 40, 43]. Chastain also testified that he performed a musculoskeletal exam and a neurological exam by watching plaintiff's movements. [Doc. #125-6, at 43]. He stated that he did not see any bruises, that plaintiff's cartilages were tender on the left, his lungs were clear, and that he had edema of his legs. [Doc. #125-6, at 42]. Plaintiff did not complain of numbness. [Doc. #125-6, at 44]. Chastain did not order an MRI because he did not see any major neurological changes or signs of spinal nerve compression, spinal stenosis, or multiple sclerosis. [Doc. ##125 at 53, 125-7, at 1]. He testified that he did not prescribe Darvocet for plaintiff's pain because of MDOC rules regarding narcotics and because he believed it was a "very dangerous" drug. [Doc. #125-7, at 8-9]. Chastain believed that plaintiff was capable of walking without a wheelchair, but that he was unwilling to do so. Chastain testified that plaintiff did not want to walk unless he was prescribed Darvocet. [Doc. #125-7, at 36-37].

The record supports the conclusion that plaintiff has failed to establish a constitutional violation. Plaintiff received ongoing medical treatment, ambulatory devices, and prescription medication for his back pain. Although plaintiff may be

---

[4] Darvocet is a centrally acting narcotic analgesic agent indicated for relief from mild to moderate pain. It can produce dependence. See Phys. Desk Ref. 3497 (60th ed. 2006).

displeased that he is confined to a wheelchair or may disagree with Chastain's treatment plan or may believe that his symptoms were disregarded, such grievances are not sufficient to support a claim of deliberate indifference. Accordingly, defendant Chastain is entitled to summary judgment on plaintiff's § 1983 claim.

### C. Count III: Section 1983 Claim Against Corizon

Plaintiff alleges that each time he was transferred to a different institution within the MDOC he informed Corizon employees of the injuries he sustained as a result of his December 2008 fall.[5] Plaintiff alleges that Corizon employees failed to determine whether plaintiff sustained a spinal injury and deprived him of essential medical care. Plaintiff alleges that Corizon maintains a policy, practice, or custom of deliberate indifference to the serious medical needs of persons similar to plaintiff. Plaintiff argues that Corizon's deliberate indifference amounted to cruel and unusual punishment in violation of the Eighth Amendment.

"Corporations acting under color of state law are liable under § 1983 for their own unconstitutional policies or customs." Floyd v. Cabrera, Case No. 2:11-CV-16 (E.D.Mo. Nov. 14, 2012) (citing Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993)). "The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." Sanders, 984 F.2d at 976 (citing Monell v. Dept. of Social Servs., 436 U.S. 658, 690 (1978)). Corporations acting under color of state law may not be held vicariously liable for the unconstitutional acts of their employees under the theory of respondeat superior. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).

---

[5] Plaintiff was injured at the ERDCC in Bonne Terre, Missouri. In 2009, plaintiff was transferred to Southeast Correction Center in Charleston, Missouri. In 2012, plaintiff was transferred to Western Missouri Correctional Center in Cameron, Missouri.

"A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). A § 1983 plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Board of County Com'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original).

Plaintiff argues that Corizon failed to establish a policy governing diagnostic or treatment decisions relating to back injuries. Thus, plaintiff contends that "Corizon was deliberately indifferent to the fact that a deprivation of inmates' right to the treatment of serious medical needs would be a 'plainly obvious consequence' of its policy, custom and practice of failing to train and supervise its doctors' diagnosis and treatment of inmates' serious medical needs." This argument fails because plaintiff has not pointed to or provided any evidence of a deliberate official policy instituted by Corizon that promotes a deliberate indifference to the medical needs of prisoners.

In contrast to the evidence required to establish an official policy, proof of a "custom" requires "(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the government entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials *after notice to the officials of that conduct*; and (3) That plaintiff was injured by acts pursuant to the governmental entity's custom[.]" John Doe A. v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990) (emphasis added). Plaintiff must demonstrate that the supervisory defendants had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation. Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001) (quoting Andrews v. Fowler, 98

-11-

F.3d 1069, 1078 (8th Cir. 1996)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than an isolated occurrence." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

Even if the Court accepts that Chastain was a supervising official who could impute liability to Corizon, plaintiff has failed to present any evidence showing that he or any other Corizon official was aware of widespread abuses resulting from the lack of an official policy for treating back injuries. See Marsh v. Butler County, Ala., 268 F.3d 1014, 1037 (11th Cir. 2001) (dismissing a claim for deliberate indifference to serious medical needs where plaintiff failed to show that the sheriff knew or should have known of the need for additional training or supervision with respect to the medical-care policies at issue); Butler ex rel. Estate of Butler v. County of Bucks, 2005 WL 639721, n. 7 (Mar. 18, 2005) ("Plaintiff's failure to train and supervise claims fail because she has not shown that a responsible municipal policymaker had contemporaneous knowledge of the offending occurrence or knowledge of a pattern of prior incidents of similar violations of constitutional rights."). Accordingly, defendant Corizon is entitled to summary judgment on plaintiff's § 1983 claim.

D.     Count IV: ADA Claim Against MDOC and Lombardi

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or *be denied the benefits of the services, programs, or activities* of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). "To state a prima facie claim under the ADA, a [p]laintiff must show: 1) he is a person with a disability as defined by the statute; 2) he is otherwise qualified for the benefit in

question; and 3) he was excluded from the benefit due to discrimination based upon his disability." <u>Randolph v. Rogers</u>, 170 F.3d 850, 858 (8th Cir. 1999).

The second amended complaint alleges that defendants Lombardi and the MDOC violated the ADA when they "excluded [plaintiff] from participation in, or denied [him] the benefits of, the services, programs or activities Defendant provided, including medical services, or activities that required [him] to use the stairs" and "failed to or refused to make reasonable accommodations for Plaintiff that would have enabled him to participate in or benefit from such services, programs or activities."

Previously, the Court liberally construed plaintiff's second amended complaint and found that he sufficiently pled an ADA claim. See <u>Rothman v. Lombardi</u>, Case No. 4:11-CV-639 (E.D.Mo. Mar. 28, 2013) (denying Lombardi's and MDOC's motion to dismiss plaintiff's ADA claim). The Court construed plaintiff's complaint to allege that the denial of his medical lay-in order, which forced him to reside in a second floor cell, consequently denied him access to services, programs, or activities that required him to use the stairs. <u>Id.</u> However, plaintiff has failed to present any evidence showing that he was denied any services, programs, or activities due to his placement in a second floor cell. In fact, plaintiff testified that despite having trouble "getting up," he was able to ascend and descend the stairs three to six times a day in order to obtain meals and medical treatment. [Doc. #125-3, at 9-10].

Plaintiff attempts to clarify his second amended complaint by explaining that he is actually "challenging Defendants' ongoing denial of medical services for over four years since he first became confined to a wheelchair." [Pl's. Response Brief, Doc. #132, at 6]. Plaintiff attempts to support this claim by stating that his injury has never been diagnosed and that he has not been provided with meaningful treatment to help

-13-

him walk without a wheelchair. However, this claim also fails because plaintiff does not present any facts or evidence showing how he was denied treatment. "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

Defendants Lombardi and the MDOC have produced medical records showing that treatment was provided to plaintiff. [Doc. ##129-3, 129-4]. The medical records reflect that x-rays were taken of plaintiff's spine, that a diagnosis was established, that plaintiff was provided with various prescription medications, and that the medical staff continued to monitor his mobility and pain even after he was issued a wheelchair. Furthermore, Chastain continued to see plaintiff until he was transferred to another facility. [Doc. #125-8].  Chastain testified that he encouraged plaintiff to stop relying on a wheelchair and walk. In Chastain's opinion, plaintiff was capable of walking without an assistive device. [Doc. #125-8, at 36-37]. While plaintiff may disagree with the aggressiveness of treatment provided to him, an inmate cannot base an ADA claim on medical treatment decisions. See Burger v. Bloomberg, 418 F.3d 882 (8th Cir. 2005) (medical treatment decisions not a basis for ADA claims); Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of a disability, not inadequate treatment for a disability."). The evidence fails to support plaintiff's claim of denial of adequate medical care.

Lastly, an allegation that plaintiff was denied his physician-prescribed medical lay-in is not, by itself, sufficient to support an ADA claim. Plaintiff must provide sufficient evidence that he was denied access to a service, program or activity at the

MDOC, which he has failed to do. See Redding v. Hanlon, 2008 WL 762078, *16 (D. Minn. Mar. 19, 2008) (dismissed plaintiff's ADA claim where plaintiff alleged that defendants had denied him the single cell accommodation ordered by his doctor, not that he had been denied access to any service or program). Accordingly, defendants Lombardi and the MDOC are entitled to summary judgment on plaintiff's ADA claim.

### E.    Count V: Rehabilitation Act Claim Against MDOC and Lombardi

The analysis of a claim based on the Rehabilitation Act is the same as that in an ADA claim, "except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." See Jaros v. Illinois Dept. of Corrections, 684 F.3d 667, 671-672 (7th Cir. 2012). Because there is insufficient evidence to establish that plaintiff was denied access to a service, program or activity, plaintiff's Rehabilitation Act claim will also fail. Accordingly, defendants Lombardi and the MDOC are entitled to summary judgment on plaintiff's Rehabilitation Act claim.

* * *

In summary, defendants have established that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment filed by defendants Ronald Cowley, George Lombardi, and the Missouri Department of Corrections [Doc. #124] is **granted**.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by defendants Charles Chastain and Corizon, Inc. [Doc. #127] is **granted**.

**IT IS FURTHER ORDERED** that the motion to bifurcate the issues for trial filed by plaintiff [Doc. #138] is **moot**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 11th day of September, 2013.